ORIGINAL

37

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
Detroit Division

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION )<br><br>Plaintiff )<br><br>v. )<br><br>MAERSK LINE, LIMITED )<br><br>Defendant ) | Case: 2:06-x -50625<br>Assigned To: Rosen, Gerald E<br>Filed: 06-28-2006 At 01:29 PM<br>MQ EEOC V. MAERSK LINE (TAM)<br><br>(Civil Action No.: 2:05cv576 pending in<br>the U.S. District Court for the Eastern<br>District of Virginia, Norfolk Division) |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION TO QUASH OR MODIFY THE SUBPOENA *DUCES TECUM* AND MOTION FOR A PROTECTIVE ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission")

respectfully moves the Court pursuant to Federal Rules of Civil Procedure 45(c)(3) to quash or

modify the subpoena *duces tecum* served on Kaled Saleh who is the aggrieved party in the

EEOC's lawsuit. The subpoena was served on Saleh Friday, June 16, 2006, by Defendant

Maersk Line, Limited ("Defendant" or "Maersk"). The EEOC also respectfully moves the Court

for a protective order under Rule 26(c) to protect Saleh from annoyance, embarrassment,

oppression and undue burden.

The Commission filed its lawsuit, Civil Action No. 2:05cv576 pending in the U.S. District Court for the Eastern District of Virginia, Norfolk Division, alleging that Defendant terminated Saleh's employment in retaliation for his complaints of national origin harassment. Saleh resides in Detroit, Michigan, which is where Defendant served this subpoena. Thus, this Court has jurisdiction over the matter in regards to the subpoena, and the EEOC's motion to quash or modify the subpoena, and motion for a protective order as it relates to matters sought in the subpoena.

The motion is based on all the files, records and proceedings herein including the Memorandum.

Respectfully submitted,

LYNETTE BARNES
Regional Attorney
Charlotte District Office

TRACY HUDSON SPICER
Supervisory Trial Attorney

AMY E. GARBER
Trial Attorney
Virginia Bar No. 37336

2

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Norfolk Local Office
200 Granby St., Suite 739
Federal Building
Norfolk, VA 23510
(757) 441-3134

Local counsel:
OMAR WEAVER
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Detroit Field Office
477 Michigan Avenue, Room 865
Detroit, MI 48226

3

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff Equal Employment Opportunity

Commission's Motion to Quash or Modify the Subpoena *Duces Tecum* and Motion for a

Protective Order and supporting memorandum was mailed to the following counsel of record this

27th day of June, 2006.

Thomas M. Lucas, Esq.
TROUTMAN SANDERS, LLP
PO Box 61185
Virginia Beach, VA 23466-1185

Amy E. Garber
Trial Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### DETROIT DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

v.

**MAERSK LINE LIMITED**

**SUBPOENA IN A CIVIL CASE**

Civil Action No.[1]: 2:05cv576
Pending in the United States District Court for the
Eastern District of Virginia, Norfolk Division

TO:   Kaled M. Saleh
      15780 Woodland Drive
      Dearborn, Michigan 48120

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

## SEE ATTACHED EXHIBIT A

| PLACE: | Thomas M. Lucas, Esquire | DATE AND TIME |
|---|---|---|
| | Kristina H. Vaquera, Esquire TROUTMAN SANDERS LLP 222 Central Park Avenue, Suite 2000 Virginia Beach, Virginia 23462 | June 30, 2005 at 10:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_  Counsel for Defendant | June 14, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Thomas M. Lucas, Esquire, Kristina H. Vaquera, Esquire, TROUTMAN SANDERS LLP, 222 Central Park Ave., Suite 2000, Virginia Beach, Virginia 23462, Telephone (757) 687-7500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT A

## EXHIBIT A

Any and all documents and/or files, including, but not limited to, correspondence, telephone messages, facsimiles, memorandum, e-mails, pay stubs, handwritten notes, affidavits, applications, statements, claims, photographs, permits, medical records and reports, relating to:

1. Maersk Line Limited; and

2. Your claims against Maersk Line Limited; and

3. Your voyages on any Maersk Line Limited vessel, including, but not limited to, your May 2001 to May 2002 assignment on the Indomitable; and

4. Payroll stubs, including benefit information, from your employment at Maersk Line, Limited; and

5. All your income information since May 2002; and

6. Photographs of yourself or others, including but not limited to Adeeb Saleh, in possession of any automatic weapons or any other weaponry; and

7. Any arrests, convictions, and citations received in any jurisdiction; and

8. Any and all passports with documentation of travel for the last five (5) years; and

9. Documents, statements, interrogatory responses submitted to the Equal Employment Opportunity Commission (EEOC) in support of your charge against Maersk Line Limited; and

10. Medical records for any treatment received from January 1, 2002 to present, including but not limited to, documentation from C. Edward Robbins, M.D. and Rayed Ali-Nasser Sofi, M.D.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY )<br>COMMISSION )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>MAERSK LINE, LIMITED )<br>)<br>Defendant ) | Civil Action No. |

### PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
### MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA *DUCES*
### *TECUM* AND MOTION FOR A PROTECTIVE ORDER

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

BY:  Amy E. Garber
     Trial Attorney
     200 Granby Street, Suite 739
     Norfolk, VA 23507

     Local counsel:
     Omar Weaver
     Trial Attorney
     477 Michigan Avenue, Room 1540
     Detroit, Michigan 48226
     (313) 226-3407

## INTRODUCTION

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed suit in the United States District Court for the Eastern District of Virginia, Norfolk Division, on September 30, 2005, against Defendant, Maersk Line, Ltd. ("Defendant"), alleging that Defendant terminated Kaled M. Saleh ("Saleh") in retaliation for his complaints about national origin harassment. On June 16, 2006, Defendant served Mr. Saleh, a Michigan citizen, with a subpoena *duces tecum,* issued out of this court. The subpoena seeks various documents that are irrelevant to this lawsuit. (Ex. 1, Subpoena) The EEOC objects to such discovery as irrelevant and harassing, annoying, embarrassing, oppressive and an undue burden.

The EEOC respectfully moves the Court to quash or modify the subpoena under Fed. R. Civ. P. 45(c)(3)(A)(iv). The EEOC also moves the Court for a protective order under Fed. R. Civ. P. 26(c) to protect Saleh from annoyance, embarrassment, oppression and undue burden.

## STATEMENT OF ISSUES:

1.          Whether pursuant to Federal Rule of Civil Procedure 45 the Court should quash Defendant's subpoena *duces tecum* directed to the aggrieved charging party in a suit brought by the Equal Employment Opportunity Commission ("EEOC") where its requests are irrelevant and therefore unduly burdensome; and

2.          Whether the Court should grant the EEOC's request for a Protective Order prohibiting further discovery regarding the above identified matters.

2

CONTROLLING AUTHORITY

Fed. R. Civ. P. 45(c)(3)(A)(iv)

Fed. R. Civ. P. 26(c)

Syposs v United States, 181 FRD 224 (W.D.N.Y. 1998).
EEOC v. Kim and Ted, Inc., 1995 WL 591451 (N.D. Ill.)
Tisdale v. Federal Express, 415 F.3d 516 (6th Cir., 2005)
Madani, et al v. BHVT Motors, 2006 U.S. Dist. LEXIS 24602 (D.Ariz. April 27, 2006)
Martin v. West Virginia University Hospitals, 2006 U.S. Dist. LEXIS 29142 (N.D. W.V. 2006).

    Burrell v. Crown Cent. Petroleum, 177 F.R.D. 376, 380 (E.D. Texas 1997)

    Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1292-93 (8th Cir. 1997)

    Bottomly v. Leucadia National, 163 F.R.D. 617 (D. Utah 1995)

    Greenburg v. Smolka, 2006 U.S. Dist. LEXIS 24319, (S.D.N.Y. April 26, 2006)

## RELEVANT FACTS

Kaled Saleh is an American citizen of Yemeni origin. Mr. Saleh filed a charge with the EEOC alleging that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq., while employed as an Able-Bodied Seaman aboard the USS Indomitable, a vessel that was operated by Defendant. Specifically, after the terrorist attacks on American soil on September 11, 2001, he was subjected to harassment based on his national origin. The harassment included being called a terrorist and being told that all persons from Yemen are terrorists. In its complaint filed against Defendant, EEOC alleges that after Mr. Saleh complained to Defendant about the national origin harassment, he was discharged. The retaliation allegation is the only allegation in the underlying lawsuit.

Defendant served the subpoena on Mr. Saleh at his Dearborn, Michigan home on or about June 16, 2006. By the subpoena, Defendant seeks discovery from Saleh of: photographs showing Mr. Saleh and others in possession of any automatic weapons or any other weaponry (Subpoena Request No. 6); any arrests, convictions, and citations received in any jurisdiction (Subpoena Request No. 7); any and all passports with documentation of travel for the last five years (Subpoena Request No. 8); and medical records from January 1, 2002 to the present. (Subpoena Request No. 10).

On June 21, 2006, the EEOC contacted Defendant's counsel by email to express concerns that Defendant's subpoena of Mr. Saleh was irrelevant and intended to harass. EEOC was concerned that several of these requests appear to be a continuation of the harassment that Mr. Saleh had already suffered based on his national origin (requests related to pictures showing possession of automatic weaponry; unlimited request for arrests, citations and convictions; and requests for passports). The remaining objectionable request (medical records) is also harassing

4

in that it is overly broad and seeks information that is not relevant. On or about the following day, the EEOC discussed the subpoena Defendant's counsel and requested that Defendant withdraw the subpoena, or request the documents in a discovery request to the EEOC who is the plaintiff in this lawsuit. Defendant refused the EEOC's request, and stated that Defendant intended to enforce the subpoena against Mr. Saleh. On Friday, June 23, 2006, the EEOC faxed and mailed Defendant's counsel a letter stating the EEOC's objections to Request Nos. 6, 7, 8 and 10 of the subpoena.

On June 26, 2006, the parties conferred about the EEOC's objections to the subpoena. Defendant continued to decline the EEOC's request to withdraw the subpoena, or to modify it to withdraw Request Nos. 6, 7, 8 and 10.[1] As a result of Defendant's refusal to withdraw or modify the subpoena, the EEOC filed this motion to quash or modify the subpoena, and this motion for a protective order.

## ARGUMENT

### 1.    Legal Standard

#### a.    Motion to quash a subpoena which is unduly burdensome

Pursuant to Fed. R. Civ. P. 45(c)(3)(a), "On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iv) subjects a person to undue burden." The reach of subpoenas issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). Syposs v United States, 181 FRD 224 (W.D.N.Y. 1998). Although the subpoena was served upon Mr. Saleh, the

---

[1] Defendant would only agree to modify the subpoena in regards to Mr. Saleh's passport as it related to any entries from May 2002 to present, and to modify the request for Mr. Saleh's record of arrests, convictions and citations to only convictions. The EEOC argues that even with such modification, the subpoena is not relevant, overbroad, beyond the scope of this litigation, and intended to subject Mr. Saleh to embarrassment, annoyance and undue burden.

EEOC has standing to file this motion to quash or modify the subpoena because Mr. Saleh is the aggrieved party in this lawsuit. Further, the EEOC is statutorily authorized to investigate charges of employment discrimination, and file civil lawsuits in its own name for specific relief for individuals. See Title VII, Section 706(b), 42 U.S.C. §2000e-5(b) and Section 706(f)(1), 42 U.S.C. §2000e-5(f)(1). See also EEOC v. Kim and Ted, Inc., 1995 WL 591451 (N.D. Ill.)(court held that EEOC had standing to move to quash subpoenas directed at witnesses, citing EEOC's legislative authority, and the purpose behind Rule 45(c)(3), which authorizes a court to quash or modify a subpoena as a means to protect witnesses from misuse of the subpoena power).

Finally, Rule 26(c) prohibits discovery which is intended to annoy, embarrass or oppress, and allows a party to seek a protective order to protect a party or other person from annoyance, embarrassment, oppression, or undue burden.

b.   Motion for protective order to protect a person from annoyance, embarrassment and undue burden

Pursuant to Rule 26(c), "[u]pon motion by a party, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .."

2.   Defendant's Request for Photographs of Saleh in Possession of Weapons is Not Relevant And Aimed At Annoying, Embarrassing and Harassing Saleh

In Request No. 6 of the subpoena, Defendant seeks discovery of "photographs of [Saleh] or others, including but not limited to Adeeb Saleh, in possession of any automatic weapons or

6

any other weaponry." (Ex. 1)[2]  Defendant's request is clearly not relevant to this lawsuit. Moreover, Defendant's request further subjects Saleh to harassment similar to which Saleh suffered while he was employed with Defendant, and which prompted Saleh's complaints that lead to his retaliatory discharge, which is the subject of this lawsuit.

For example, after the September 11 attacks, Defendant employees repeatedly called Saleh, who is an Arab from Yemeni, a terrorist. Further, an employee stated that all persons from Yemen were terrorists, and should be interned like the Japanese during World War II. (Ex. 2, EEOC Charge of Kaled Saleh). Defendant's discovery request for photographs of Saleh possessing weaponry are not relevant to the issue of whether he was discharged for complaining of national origin harassment. In contrast, the Defendant's conduct is an attempt to subject Saleh to further harassment, embarrassment, annoyance and undue burden. Accordingly, the Court should modify the subpoena to prohibit the request for such photographs, and grant the EEOC's motion for a protective order to prohibit such discovery.

3.    Defendant's Request for Documents Relating to Arrests, Convictions, and Citations is Overly Broad, Not Relevant and Harassing

In Request No. 7, Defendant seeks discovery of "any arrests, convictions, and citations received in any jurisdiction." First, the request is overly broad as it has no limitation as to time and scope. Second, it is not relevant under Rule 26(b) to the claims or defenses in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Finally, all discovery is subject to limitations. Federal Rule of Evidence 403 mandates that relevant evidence be more probative than prejudicial. In the instant case, any probative value that such information may have would clearly be outweighed by the prejudice that Saleh would suffer by such disclosure. Moreover, Defendant's request is overly broad as evidence of a conviction more

---

[2] Adeeb Saleh is Charging Party Kaled Saleh's younger brother.

than 10 years old is not admissible under Federal Rules of Evidence, Rule 609, and evidence of arrests and citations are neither relevant nor admissible. Such evidence is excludable as irrelevant. See Tisdale v. Federal Express, 415 F.3d 516 (6th Cir., 2005); and Madani, et al v. BUVT Motors, 2006 U.S. Dist. LEXIS 24602 (D.Ariz. April 27, 2006) (court excluded evidence of criminal convictions that did not meet the standard of Federal Rule of Evidence 609). Again, Defendant's discovery is aimed at subjecting Saleh to embarrassment, annoyance and undue burden. Defendant should be prohibited from subjecting Saleh to harassment simply because he complained of discrimination.

      4.     Defendant's Request for Saleh's Passport is Not Relevant

In Request No. 8, Defendant seeks "any and all passports with documentation of travel for the last five (5) years." Defendant's request is not relevant to this litigation. Again, Defendant is subjecting Saleh to embarrassment, annoyance and undue burden. Defendant should be prohibited from harassing Saleh simply because he asserted his federally protected right under Title VII to be free from harassment and retaliation.

      5.     Defendant's Request for Saleh's Medical Records is Not Relevant

In Request No. 10, Defendant seeks Saleh's medical records for any treatment he received from January 1, 2002 to present. Defendant's request is not relevant, is overly broad, burdensome, and beyond the scope of this litigation. The request is also harassing and an invasion of Saleh's privacy. In this lawsuit, EEOC seeks compensatory damages for Mr. Saleh which include emotional distress, inconvenience, loss of enjoyment of life, and humiliation; it is not a claim of "severe" emotional harm. While the allegation and proof of severe emotional distress and a mental condition can support a discovery request for a broader range of medical

8

records, the EEOC is not claiming that Mr. Saleh suffers from more than garden variety emotional distress or that he has a diagnosed mental condition. See Martin v. West Virginia University Hospitals, 2006 U.S. Dist. LEXIS 29142 (N.D. W.V. 2006).

The EEOC does not intend to support its claim with medical experts, but rather with testimony of lay witnesses, and possibly a psychologist with whom Mr. Saleh previously consulted. This psychologist would be called only as a fact witness, not an expert witness. The EEOC has identified two health care providers that Mr. Saleh has seen in connection with the discrimination by Defendant. The EEOC also identified a health care provider who Mr. Saleh recently saw on a matter that has no relevance to the claim for emotional distress damages. The EEOC is currently attempting to obtain the relevant medical records from these identified health care providers, and intends to disclose such relevant documents to Defendant after the EEOC has had an opportunity to review such documents.

In light of these facts, discovery of Mr. Saleh's medical records should be limited to the medical records relating to his care by these three identified health care professionals. Defendant should be prohibited from discovery of all medical records for any medical treatment. Courts have ruled in similar cases that medical records are not relevant for discovery purposes simply because the individual has made a "garden-variety" claim for emotional distress damages. See Burrell v. Crown Cent. Petroleum, 177 F.R.D. 376, 380 (E.D. Texas 1997)(court held that claim for mental anguish damages does not place a plaintiff's physical or mental condition in controversy); Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1292-93 (8th Cir. 1997)(appellate court in sexual harassment case criticized the district court for allowing discovery of certain alternative potential causes of psychological harm, stating such discovery was irrelevant and should have been prohibited); Bottomly v. Leucadia National, 163 F.R.D. 617 (D. Utah

9

1995)(court in Title VII case limited production of medical records to those which an expert would reasonably rely upon); and Greenburg v. Smolka, 2006 U.S. Dist. LEXIS 24319, (S.D.N.Y. April 26, 2006)(court rejected "the notion that plaintiff's demand for emotional distress damages necessarily triggers a waiver of the privilege for her psychotherapy records.")

Defendant cannot go on a fishing expedition into Mr. Saleh's medical records for any treatment he received for the last five years. Accordingly, the Court should grant the EEOC's motion to quash or modify the subpoena, and the motion for a protective order.

## CONCLUSION

Based on the foregoing reasons, the EEOC requests that this Court grant its motion to quash or modify the subpoena, and grant its motion for a protective order to prohibit Defendant from seeking discovery on matters relating to Request Nos. 6, 7, 8 and 10 in the subpoena.

Respectfully submitted,

LYNETTE BARNES
Regional Attorney
Charlotte District Office

TRACY HUDSON SPICER
Supervisory Trial Attorney

AMY E. GARBER
Trial Attorney
Virginia Bar No. 37336

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

10

Norfolk Local Office
200 Granby St., Suite 739
Federal Building
Norfolk, VA 23510
(757) 441-3134

Local counsel:
OMAR WEAVER
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
Detroit Field Office
477 Michigan Avenue, Room 865
Detroit, MI  48226

11

# Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,
andDeborah Tabor, Plaintiff-Intervenor,

v.

KIM AND TED, INC., d/b/a Old Main Inn,
Theodore Strompolis, and Kimon Kokonas,
Defendants.
**No. 95 C 1151.**

Oct. 3, 1995.

### *MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.
*1     The     Equal     Employment     Opportunity
Commission ("EEOC") and Deborah L. Tabor
(collectively "plaintiffs") sue Kim and Ted, Inc.,
d/b/a Old Main Inn, Theodore Strompolis, and
Kimon Kokonas (collectively "defendants") under
Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e *et seq.* Plaintiffs
allege that defendants discriminated against Tabor
and other female employees by subjecting them to
sexual      harassment,      conditioning      continued
employment on their assent to sexual conduct and
constructively discharging them. The EEOC
moves to quash several subpoenas served by
defendants on class members and non-class
members, and the employers of non-class members,
as well as to bar defendants in the future from
serving similar subpoenas, pursuant to Fed.R.Civ.P.
45(c).

### *BACKGROUND*

The     amended     complaint     seeks     back     pay,
compensatory damages and/or punitive damages on
behalf of each alleged victim of sexual harassment.

On April 19, 1995,[FN1] the court ordered discovery
to be completed by October 19. On May 30, the
EEOC      answered      defendants'      interrogatories,
identifying Karin Anderson, Kathy Avalos, Breda
Dean, Lisa Malay, Niva Pearson and Margaret
Wojcik, among others, as potential class members
for whom the EEOC seeks back pay, compensatory
damages and/or punitive damages.

On August 2, the EEOC moved to compel
defendants to answer its interrogatories; at that
time, defendants' responses were 36 days late. On
August 9, the court granted the EEOC's motion to
compel and directed defendants to comply with all
outstanding discovery by August 18. *See* Order,
No. 95 C 1151 (N.D.Ill. Aug. 9, 1995). On August
18, defendants served the EEOC with its discovery
responses,      which      included      the      identity      of
defendants' current and former employees.

On August 21, defendants served subpoenas on
current and previous employers of Dean, Malay and
Wojcik. Defendants sought each woman's entire
personnel file, all documents reflecting monies
earned and rate of compensation, and all documents
pertaining to any benefits received. Plaintiff's
Exhibit ("Pl.Ex.") C. The subpoenas for records
had a return date of September 12. Defendants
have not served subpoenas on employers of
Anderson, Avalos or Pearson.

On August 29, 1995, the EEOC informed
defendants by letter that the EEOC did not seek any
relief for Avalos and Malay. The EEOC noted that
it may call Malay as a trial witness. The EEOC
verbally informed defendants on many occasions,
and by letter dated September 11, that the EEOC
did not seek relief for Anderson, Pearson and
Wojcik.

On September 8, the court granted the EEOC's
agreed motion for a protective order. The
protective order applies to "[a]ny and all federal
and/or state tax returns and all schedules, exhibits

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

and other attached forms thereto, including all 1099s and W-2s" produced by the plaintiffs or any class member.

On September 8, the EEOC informed defendants' counsel that the EEOC objected to the subpoenas directed at Malay's and Wojcik's employers because the EEOC did not seek relief on their behalf. The EEOC requested that the subpoenas be withdrawn. Defendants refused to withdraw the subpoenas, claiming that these records were relevant to the ease of securing a similar waitress job in the community.

*2 That same day, defendants served Dean, a class member, with a subpoena to appear for deposition on September 11 with documents: (i) reflecting any statement Dean made concerning this case; (ii) pertaining to treatment or therapy stemming from the alleged unlawful actions; (iii) relating to police reports pertaining to Dean and defendants; (iv) reflecting Dean's earnings while employed for defendants and subsequently, including all tax documentation; (v) reflecting Dean's employment history prior to working for defendants; (vi) reflecting Dean's efforts to obtain employment subsequent to working for defendants; and (viii) relating to any of Dean's damage claims. Pl.Ex. E. On September 11, both prior to and at Dean's deposition, the EEOC stated it would not seek back pay on Dean's behalf, but only compensatory and punitive damages. Additionally, the EEOC objected to Dean's subpoena because her state and federal income taxes were irrelevant because her back pay was no longer at issue.

On September 12, defendants served a deposition and records subpoena on witness/non-class member Christine LaBarre. The LaBarre subpoena is identical to the subpoena served on Dean.

### DISCUSSION

The EEOC seeks to: (i) bar defendants from discovering tax information of class members who do not seek back pay; (ii) quash Dean and LaBarre's deposition subpoenas requesting, in part, their state and federal income tax records; (iii) quash the subpoenas directed to the current and previous employers of Dean, Malay and Wojcik; and (iv) bar defendants from subpoenaing the employment records and/or state and federal tax records of any other non-class member. Defendants contest the EEOC's ability to bring this motion to quash on behalf of non-party witnesses. Moreover, defendants argue that the material sought is relevant to class members' mitigation of damages, which defendants claim applies to compensatory damages as well as back pay. Finally, defendants contend that purported privacy interests should not be affected because disclosure would be pursuant to the protective order entered on September 8.

### I. EEOC Standing

The EEOC argues that it has standing to file its motion on behalf of non-party witnesses the EEOC identified to defendants who are affected by the subpoenas. The EEOC claims that defendants are intimidating witnesses who may testify against them by intruding into their private lives.

The EEOC is statutorily authorized to investigate charges of employment discrimination and may bring a civil action in its own name for specific relief for a group of aggrieved individuals. *See* 42 U.S.C. § 2000e-5; *General Telephone Co. v. E.E.O.C.*, 446 U.S. 318, 333 (1980); *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 368 (1977). The EEOC need not be certified as a class representative, nor does Rule 23 apply to EEOC actions brought in its own name. *General Telephone*, 446 U.S. at 324, 330-33.

Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45. But a party's subpoena power is not unlimited. Like other means of discovery, a subpoena is limited to matters that are relevant to the pending action and appear reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1); *Greer Properties, Inc. v. La Salle National Bank*, No. 87 C 10983, 1990 WL 44692, at *1 (N.D.Ill. Apr. 9, 1990). A subpoena may not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

require disclosure of privileged or protected matters. Fed.R.Civ.P. 45(c). Rule 45(c)(3) authorizes a trial court to quash or modify a subpoena "as a means of protecting the witness from misuse of the subpoena power." Fed.R.Civ.P. 45, advisory committee's note on 1991 amendment, at 175 (West 1995). Given the EEOC's legislative authority, the purpose behind Rule 45 and the EEOC's claim that defendants' misused their subpoena power, the EEOC may move to quash subpoenas affecting defendants' former employees who are not class members.

**\*3** In addition, the EEOC's motion does not seek simply to quash or modify defendants' subpoenas. Rather, the EEOC is seeking a broad order to protect class and non-class members in the future from disclosing confidential and purportedly irrelevant information. Accordingly, the court treats the EEOC's motion as seeking a protective order limiting the scope of defendants' discovery pursuant to Rule 26(c).[FN2] Because Rule 26(c) motions may be brought by a party or by the person from whom discovery is sought, the EEOC has standing to bring its motion.

### II. *Discovery Of Requested Documents*

The EEOC concedes that defendants may discover class members' lost wages and efforts to mitigate back pay damages. Moreover, class members' tax information is subject to the September 8 protective order. The EEOC argues that defendants' may not discover tax information from non-class members or class members not claiming back pay. The EEOC contends that this information is private and confidential, immaterial to any issue in the pending action, and not reasonably calculated to lead to admissible evidence. Defendants counter that tax information from non-class members and class members who are not claiming back pay is relevant to class members' duty to mitigate with respect to back pay and compensatory damages.

### A. *Class Members*

The duty to mitigate damages most typically applies

to back pay damages. The EEOC apparently argues that the duty to mitigate no longer applies if there is no back pay claim. Hence, the tax information would be immaterial.

The EEOC's argument is buttressed by the fact that compensatory damages available under the 1991 amendments to Title VII ("1991 amendments") do not include back pay or "any other type of relief authorized under section 706(g)." 42 U.S.C. § 1981a(b)(2). Section 706(g) affords equitable relief: reinstatement with or without back pay. 42 U.S.C. § 2000e-5(g). But front pay is available as compensatory damages under the 1991 amendments. The 1991 amendments provide that compensatory damages are awarded for future pecuniary losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C. § 1981a(b)(3); *Hutchison v. Amateur Electronic Supply, Inc.*, 840 F.Supp. 612, 621 n. 7 (E.D.Wis.1993), *aff'd in part and rev'd in part*, 42 F.3d 1037 (7th Cir.1994). The EEOC does not dispute that all class members seek future pecuniary losses. First Amended Complaint at p. 5, ¶ D.

Mitigation principles apply to front pay and loss of pecuniary losses. *Hutchison*, 42 F.3d at 1044. To establish the affirmative defense of failure to mitigate damages, the defendants must show that: (1) the plaintiff failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. *Id.* at 1044. Tax information and personnel documents from employers for whom class members have worked subsequent to working for defendants are relevant and may lead to admissible evidence concerning mitigation. Furthermore, this information is subject to the September 8 protective order. Accordingly, the EEOC's motion to quash subpoenas served on Dean and Dean's employers, and for an order precluding discovery of class members' tax information and personnel documents from class members' employers other than defendants, must be denied.

### B. *Other Employees*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 4

Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

\*4 The EEOC's argument is more persuasive as it relates to non-class members who are either witnesses (Malay and LaBarre) or not witnesses (Wojcik) (collectively "non-class members"). Defendants contend that tax and personnel information from non-class members should be discoverable for the same reasons as it is discoverable from class members. However, the relevancy of non-class members' tax information on class members' mitigation efforts is slight if any. While tax returns in the hands of a taxpayer are not privileged, there is a policy against the disclosure of tax returns unless a litigant raises the issue herself. *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74-75 (7th Cir.1992); *Cohn v. Taco Bell Corp.,* No. 92 C 5852, 1994 WL 383975, at \*4 (N.D.Ill. July 20, 1994). Non-class members are not litigants; their income is not at issue. *Cohn,* 1994 WL 383975 at \*4. Moreover, defendants have access to information concerning class members' mitigation efforts. Thus, any possible relevancy of non-class members' tax information is substantially outweighed by non-class members' hardship as expressed in the policy against disclosure.

Accordingly, the EEOC's motion to bar discovery of non-class members' tax information must be granted. Defendants' LaBarre subpoena must exclude her federal and state tax returns, including 1099's and W-2's.

Non-class members' personnel files from employers other than defendants is of scant probative value on the issue of class members' mitigation efforts. Personnel files usually contain more information than defendants claim they need. The EEOC does not dispute that defendants may discover personnel information relating to witnesses' dates of employment with subsequent employers.

Accordingly, the EEOC's motion to quash and to limit the scope of defendants' discovery relating to non-class members' subsequent employers must be granted in part. Defendants are not entitled to another employer's entire personnel file on a non-class member. Defendants' subpoenas on the employers of Malay and Wojcik must be modified; the request made in paragraph one shall be limited to documents relating to their date of hire. Future

subpoenas served on non-class members' employers shall be modified accordingly.

### CONCLUSION

Plaintiff Equal Employment Opportunity Commission's motion to quash is granted in part and denied in part. Plaintiff's motion relating to Breda Dean and discovery of other class-members' tax information is denied. Plaintiff's motion relating to non-class members' tax information is granted. Plaintiff's motion relating to non-class members' personnel information is granted in part. Paragraph one of defendants' subpoenas served on the employers of Malay and Wojcik, and future subpoenas served on non-class members' employers, must be limited to documents relating to the individual's date of hire.

Plaintiff shall serve its portion of the joint final pretrial order on defendants by Friday, October 27, 1995. On the court's own motion, presentation of the joint final pretrial order is extended from November 2, 1995 to November 13, 1995 at 9:00 a.m. The case is placed on the December trial calendar.

> FN1. All dates take place in 1995 unless otherwise noted.
>
> FN2. The EEOC establishes that it has in good faith conferred or attempted to confer with defendants in an attempt to resolve the dispute without court action.

N.D.Ill.,1995.
E.E.O.C. v. Kim and Ted, Inc.
Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:95cv01151 (Docket) (Feb. 23, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2006 U.S. DIST. LEXIS 29142

**MARY MARTIN, Plaintiff v. WEST VIRGINIA UNIVERSITY HOSPITALS, INC., a West Virginia Corporation, Defendant**

**CRIMINAL ACTION NO. 1:05CV64**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**2006 U.S. Dist. LEXIS 29142**

**April 5, 2006, Decided**
**April 5, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by Martin v. W. Va. Univ. Hosps., Inc., 2006 U.S. Dist. LEXIS 29858 (N.D. W. Va., Apr. 5, 2006)

**COUNSEL:** [*1] For Mary Martin., Plaintiff: David L. Grubb, The Grubb Law Group, Charleston, WV; Wendy E. Radcliff, The Grubb Law Group, Charleston, WV

For West Virginia University Hospitals, Inc., a corporation, Defendant: Constance H. Weber, Kay, Casto & Chaney, PLLC-Charleston, Charleston, WV; Tonya P. Mullins, Kay, Casto & Chaney, PLLC-Charleston, Charleston, WV

**JUDGES:** JOHN S. KAULL, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** JOHN S. KAULL

**OPINION:**

### ORDER/OPINION

On the 28th day of February, 2006, Defendant, "West Virginia University Hospitals, Inc." ("Defendant") filed its Motion to Compel [Docket Entry 69]. On the 14th day of March, 2006, Plaintiff Mary Martin ("Plaintiff") filed her Response [Docket Entry 75] and Motion for Protective Order [Docket Entry 76].

The issues in these motions are not complex and the undersigned finds the parties' memoranda sufficient to decide the issue without oral argument.

Plaintiff filed a Complaint in this matter alleging that Defendant terminated her employment due to a temporary disability or handicap in violation of the West Virginia Human Rights Act and Family Medical Leave Act. As a result of Defendant's conduct, Plaintiff alleges she "has suffered [*2] lost wages and benefits, out-of-pocket losses, emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance and inconvenience." (Complaint at paragraphs 6 and 42). In her Prayer for Relief Plaintiff requests, among others, "compensatory damages in an amount to be determined at trial for the severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience suffered by her as a result of Defendant's unlawful conduct." (Complaint at page 8, paragraph 7).

On July 5, 2005, Defendant served upon Plaintiff its "First Set of Interrogatories and Request for Production of Documents." Plaintiff filed her answers and responses on August 22, 2006. n1 The following requests and responses are at issue for the purposes of Defendant's Motion:

> INTERROGATORY NO. 12: Please provide the following information for any and all health care providers you have consulted for treatment in the past and present: name, address and medical speciality, if any; the approximate number of years you have consulted said provider; nature of the condition for which you consulted each health care provider; diagnosis [*3] and type of treatment prescribed, including any and all prescription medications; and list the medications you are currently taking and the name of the provider who prescribed each.

> ANSWER: OBJECTION: This Interrogatory is overly broad and exceeds the scope of permissible discovery under Rule 26 of the West Virginia Rules of Civil Proce-

2006 U.S. Dist. LEXIS 29142, *

dure. Specifically, it is overly broad because it is not limited in scope or subject matter. It is also overly broad because the time period for which it seeks information-i.e., "past and present" -- is excessive and not reasonable [sic] calculated to lead to the discovery of admissible evidence.

Without waiving such OBJECTIONS, and in a good faith effort to answer the portion of the Interrogatory that is not objectionable, Plaintiff attaches hereto medical records which are applicable to the allegations in her Complaint.

REQUEST NO. 9: Produce all medical records from health care providers identified in response to Interrogatories [sic] number 12 or execute, sign and return the attached release authorizing the law firm of KAY CASTO & CHANEY PLLC to receive copies of any and all medical records from those health care providers. [*4]

RESPONSE: Please see Plaintiff's answer to Interrogatory number 12 *supra,* and the documents attached hereto.

---

n1 The parties do not raise the issue of timeliness, and the undersigned finds, under the particular facts of this motion, that Defendant's motion is timely filed.

---

According to Defendant, Plaintiff did not execute a medical authorization, but did attach records reflecting treatment provided by Caroline Esposito, Plaintiff's mental health counselor, beginning October 9, 2002.

Also according to Defendant, it subsequently agreed to limit the above-stated requests to information related only to Plaintiff's "past treatment for depression, anxiety or any other mental or emotional condition." (Defendant's Motion at 5).

During Plaintiff's deposition on November 22, 2005, Plaintiff testified as to a period of treatment with Caroline Esposito for anxiety in January 2002. Plaintiff, however, had not produced records regarding treatment by Ms. Esposito during this time period.

In her Response [*5] to the Motion to Compel, Plaintiff states the "at issue" medical records concern: 1)

Treatment from October 1993 to August 1995 and 2) treatment from July 2001 to May 2003.

Defendant certified counsel for the parties conferred via telephone on Tuesday, February 28, 2006, in an effort to narrow the scope of the motion prior to filing with the Court.

## DISCUSSION

Defendant argues it is entitled to discover all of Plaintiff's mental health records as she has put her mental health at issue. Plaintiff argues Defendant's actions resulted in only: (1) "garden variety" emotional distress and (2) a relapse of her depression. In addition, Plaintiff argues the records of treatment from 1993 to 1995 "occurred more than ten years ago and [are] completely unrelated to any of the allegations in the Complaint . . ." and the records from July 2001 to May 2003 "involve[] matters unrelated to the allegations in the Complaint." Further, "in both instances, the information requested involved the disclosure of highly private and personal information of a sensitive and confidential nature." (Plaintiff's Response at 3). In support, Plaintiff cites Burrell v. Crown Central Petroleum, Inc., 177 F.R.D. 376 (E.D. Tex. 1997); [*6] Jenson v. Eveleth Taconite Co., 130 F.3d 1287 (8th Cir. 1997); and Bottomly v. Leucadia National, 163 F.R.D. 617 (D. Utah 1995).

The undersigned finds the above-cited cases are distinguishable from and do not support Plaintiff on this issue. In Burrell, the court first noted that the plaintiff had not put her mental condition "in controversy" for purposes of a Rule 35 independent medical examination. The court then held that the plaintiff's mental condition had not been put "at issue" for purposes of Federal Rule of Civil Procedure 26(a)(1)(B) disclosures. In the present case, however, Defendants request the information pursuant to F.R.Civ.P. 26(b)(1), which provides, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. n2

---

n2 In contrast, Rule 26(a)(1)(B) mandates production of evidence "that the disclosing party may use to support its claims or defenses . . . ." and Rule 35 applies "when the mental . . . condition . . . of a party . . . is in controversy." Neither rule is as broad as Rule 26.

[*7]

In Jenson, the defendants had sought discovery of the personal background of the plaintiffs, including their detailed medical histories, childhood experiences, domestic abuse, abortions, sexual relationships, etc. The court agreed that "much of" that discovery was not relevant or too remote in time. Here Defendants are requesting records of treatment for mental impairments, from a plaintiff who has alleged, among others, depression and "a relapse of her depression."

In Bottomly, the court stated held that a plaintiff did not waive privacy interests on matters that were "unrelated to the case or not calculated to lead to admissible evidence." Here the undersigned cannot say that Defendant's request for records concerning Plaintiff's treatment for mental health problems is "unrelated" to a case in which she alleges, among others, depression and a relapse of her depression.

Defendant argues that: 1) Plaintiff's claimed mental damages are not "garden variety" emotional distress; 2) Plaintiff's history of depression is not only relevant to her claim of emotional distress but also to her claim of disability discrimination; and 3) the liberal rules of discovery require the [*8] production of mental health records, even if the claim is for "garden variety" emotional distress. In support, Defendant cites Merrill v. Waffle House, Inc., 227 F.R.D. 467 (N.D. Tex 2005). In Merrill, as here, the plaintiff argued that certain medical records were irrelevant. Significantly, the plaintiff also relied on Burrell. The court in Merrill found Burrell inapplicable because it relied on Rule 26(a)(1)(B), not Rule 26(b)(1). This recent case then discussed other courts' findings regarding the issue:

> Utilizing this broad construction of relevance in Rule 26(b)(1), several courts have found that medical records are relevant to claims of mental anguish in discrimination cases. See Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 657, 660 (D.Kan.2004)(finding that records relating to plaintiff's medical care, treatment, and counseling were relevant to claim for "garden variety" emotional damages under Title VII as well as to defenses against claim because the records could reveal unrelated stressors that could have affected her emotional well-being); Fitzgerald v. Cassil, 216 F.R.D. 632, 634 (N.D.Ca.2003)(finding [*9] that medical

records involving mental health, including physical conditions tied to mental health, were relevant under the broad definition of relevance in Rule 26(b)(1)); Payne v. City of Philadelphia, 2004 U.S. Dist. LEXIS 8425, 2004 WL 1012489, *3 (E.D.Pa. May 5, 2004)(finding that mental health records were relevant since they might suggest whether plaintiff's mental injuries were due to circumstances prior to or as a result of incident at issue, or whether he suffered injuries at all, and interests of adequate and fair discovery favored discovery); Garrett v. Sprint PCS, 2002 U.S. Dist. LEXIS 1914, 2002 WL 181364 (D.Kan. Jan.31, 2002)(finding that plaintiff's intent not to present expert testimony in support of her emotional distress claim did not make medical records and information any less relevant); LeFave, 2000 U.S. Dist. LEXIS 22278, 2000 WL 1644154, *2 (finding that medical records were relevant to claim for emotional distress damages and to defense against claim because they could reveal unrelated stressors). See also Simpson, 220 F.R.D. at 365 (finding that medical records specifically referencing or describing plaintiff's emotional or psychological condition were relevant and should [*10] be disclosed, but disallowing disclosure of other medical records relating to physical injuries or conditions unrelated to claims at issue).

Plaintiff has alleged damages due to "severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience." The undersigned finds that Plaintiff's alleged damages, including depression and relapse of depression, are not "garden variety" mental emotional distress. The undersigned finds the evidence sought by Defendant "appears reasonably calculated to lead to the discovery of admissible evidence," and is therefore discoverable. Defendant's Motion to Compel [Docket Entry 69] is therefore **GRANTED** and Plaintiff's Motion for Protective Order [Docket Entry 76] is **DENIED.** This order does not address the admissibility of any such evidence produced.

Plaintiff shall fully respond, within ten (10) days, to Defendant's Interrogatory No. 12 and Request No. 9, as limited by Defendant to "any and all records reflecting treatment for any mental or emotional condition, including any and all records reflecting Plaintiff's treatment with Caroline Esposito." It is further **ORDERED** [*11]

that, if the parties do not already have a "Protective Order" in place that would protect these documents from further dissemination,:

1. All such records produced shall be marked "confidential" by Plaintiff;

2. No copy of the information submitted shall be filed with the Court;

3. Counsel for Defendant shall be responsible for maintaining a list of each and every party, parties' attorneys, and parties' experts who is permitted by him or her to see or have a copy of all or any part of the documents produced in accord with this Order;

4. Prior to permitting any person to see or receive a copy of the information produced pursuant to this Order, counsel shall deliver to each and every such person a copy of this Order, including the protective provisions hereof, and have them sign a written receipt by which they acknowledge they have read and understand the order and are bound thereby;

5. The information contained in the documents shall not be exhibited, reproduced, disseminated, described, made available for inspection or copying in kind, nor shall the same be disclosed whole or in part in any other manner to any person other than the Court, the parties, the parties' attorneys and [*12] the parties' experts;

6. The information contained in the documents shall not be further released, disclosed, discussed or used beyond that which is specifically provided for herein except upon the prior written Order of this Court;

7. Within 30 days of the entry of an Order completing this case and if the records or their contents are not admitted as part of the evidence before a jury and thus made public, said records and the authorized copies thereof, together with the written and signed acknowledgments required hereunder, shall be gathered up by counsel for Defendant and thereafter delivered to counsel for Plaintiff.

**IT IS SO ORDERED.**

The United States District Clerk for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record.

DATED: April 5, 2006

JOHN S. KAULL

UNITED STATES MAGISTRATE JUDGE

LEXSEE 2006 U.S. DIST. LEXIS 29142

**MARY MARTIN, Plaintiff v. WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,
a West Virginia Corporation, Defendant**

**CRIMINAL ACTION NO. 1:05CV64**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
WEST VIRGINIA**

**2006 U.S. Dist. LEXIS 29142**

**April 5, 2006, Decided
April 5, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by Martin v. W. Va. Univ. Hosps., Inc., 2006 U.S. Dist. LEXIS 29858 (N.D. W. Va., Apr. 5, 2006)

**COUNSEL:** [*1] For Mary Martin., Plaintiff: David L. Grubb, The Grubb Law Group, Charleston, WV; Wendy E. Radcliff, The Grubb Law Group, Charleston, WV

For West Virginia University Hospitals, Inc., a corporation, Defendant: Constance H. Weber, Kay, Casto & Chaney, PLLC-Charleston, Charleston, WV; Tonya P. Mullins, Kay, Casto & Chaney, PLLC-Charleston, Charleston, WV

**JUDGES:** JOHN S. KAULL, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** JOHN S. KAULL

**OPINION:**

### ORDER/OPINION

On the 28th day of February, 2006, Defendant, "West Virginia University Hospitals, Inc." ("Defendant") filed its Motion to Compel [Docket Entry 69]. On the 14th day of March, 2006, Plaintiff Mary Martin ("Plaintiff") filed her Response [Docket Entry 75] and Motion for Protective Order [Docket Entry 76].

The issues in these motions are not complex and the undersigned finds the parties' memoranda sufficient to decide the issue without oral argument.

Plaintiff filed a Complaint in this matter alleging that Defendant terminated her employment due to a temporary disability or handicap in violation of the West Virginia Human Rights Act and Family Medical Leave Act. As a result of Defendant's conduct, Plaintiff alleges she "has suffered [*2] lost wages and benefits, out-of-pocket losses, emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance and inconvenience." (Complaint at paragraphs 6 and 42). In her Prayer for Relief Plaintiff requests, among others, "compensatory damages in an amount to be determined at trial for the severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience suffered by her as a result of Defendant's unlawful conduct." (Complaint at page 8, paragraph 7).

On July 5, 2005, Defendant served upon Plaintiff its "First Set of Interrogatories and Request for Production of Documents." Plaintiff filed her answers and responses on August 22, 2006. n1 The following requests and responses are at issue for the purposes of Defendant's Motion:

> INTERROGATORY NO. 12: Please provide the following information for any and all health care providers you have consulted for treatment in the past and present: name, address and medical speciality, if any; the approximate number of years you have consulted said provider; nature of the condition for which you consulted each health care provider; diagnosis [*3] and type of treatment prescribed, including any and all prescription medications; and list the medications you are currently taking and the name of the provider who prescribed each.

> ANSWER: OBJECTION: This Interrogatory is overly broad and exceeds the scope of permissible discovery under Rule 26 of the West Virginia Rules of Civil Proce-

dure. Specifically, it is overly broad because it is not limited in scope or subject matter. It is also overly broad because the time period for which it seeks information-i.e., "past and present" -- is excessive and not reasonable [sic] calculated to lead to the discovery of admissible evidence.

Without waiving such OBJECTIONS, and in a good faith effort to answer the portion of the Interrogatory that is not objectionable, Plaintiff attaches hereto medical records which are applicable to the allegations in her Complaint.

REQUEST NO. 9: Produce all medical records from health care providers identified in response to Interrogatory [sic] number 12 or execute, sign and return the attached release authorizing the law firm of KAY CASTO & CHANEY PLLC to receive copies of any and all medical records from those health care providers. [*4]

RESPONSE: Please see Plaintiff's answer to Interrogatory number 12 *supra*, and the documents attached hereto.

n1 The parties do not raise the issue of timeliness, and the undersigned finds, under the particular facts of this motion, that Defendant's motion is timely filed.

According to Defendant, Plaintiff did not execute a medical authorization, but did attach records reflecting treatment provided by Caroline Esposito, Plaintiff's mental health counselor, beginning October 9, 2002.

Also according to Defendant, it subsequently agreed to limit the above-stated requests to information related only to Plaintiff's "past treatment for depression, anxiety or any other mental or emotional condition." (Defendant's Motion at 5).

During Plaintiff's deposition on November 22, 2005, Plaintiff testified as to a period of treatment with Caroline Esposito for anxiety in January 2002. Plaintiff, however, had not produced records regarding treatment by Ms. Esposito during this time period.

In her Response [*5]  to the Motion to Compel, Plaintiff states the "at issue" medical records concern: 1)

Treatment from October 1993 to August 1995 and 2) treatment from July 2001 to May 2003.

Defendant certified counsel for the parties conferred via telephone on Tuesday, February 28, 2006, in an effort to narrow the scope of the motion prior to filing with the Court.

## DISCUSSION

Defendant argues it is entitled to discover all of Plaintiff's mental health records as she has put her mental health at issue. Plaintiff argues Defendant's actions resulted in only: (1) "garden variety" emotional distress and (2) a relapse of her depression. In addition, Plaintiff argues the records of treatment from 1993 to 1995 "occurred more than ten years ago and [are] completely unrelated to any of the allegations in the Complaint . . ." and the records from July 2001 to May 2003 "involve[] matters unrelated to the allegations in the Complaint." Further, "in both instances, the information requested involved the disclosure of highly private and personal information of a sensitive and confidential nature." (Plaintiff's Response at 3). In support, Plaintiff cites Burrell v. Crown Central Petroleum, Inc., 177 F.R.D. 376 (E.D. Tex. 1997); [*6]  Jenson v. Eveleth Taconite Co., 130 F.3d 1287 (8th Cir. 1997); and Bottomly v. Leucadia National, 163 F.R.D. 617 (D. Utah 1995).

The undersigned finds the above-cited cases are distinguishable from and do not support Plaintiff on this issue. In Burrell, the court first noted that the plaintiff had not put her mental condition "in controversy" for purposes of a Rule 35 independent medical examination. The court then held that the plaintiff's mental condition had not been put "at issue" for purposes of Federal Rule of Civil Procedure 26(a)(1)(B) disclosures. In the present case, however, Defendants request the information pursuant to F.R.Civ.P. 26(b)(1), which provides, in pertinent part:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. n2

n2 In contrast, Rule 26(a)(1)(B) mandates production of evidence "that the disclosing party may use to support its claims or defenses . . . ." and Rule 35 applies "when the mental . . . condition . . . of a party . . . is in controversy." Neither rule is as broad as Rule 26.

[*7]

In Jenson, the defendants had sought discovery of the personal background of the plaintiffs, including their detailed medical histories, childhood experiences, domestic abuse, abortions, sexual relationships, etc. The court agreed that "much of" that discovery was not relevant or too remote in time. Here Defendants are requesting records of treatment for mental impairments, from a plaintiff who has alleged, among others, depression and "a relapse of her depression."

In Bottomly, the court stated held that a plaintiff did not waive privacy interests on matters that were "unrelated to the case or not calculated to lead to admissible evidence." Here the undersigned cannot say that Defendant's request for records concerning Plaintiff's treatment for mental health problems is "unrelated" to a case in which she alleges, among others, depression and a relapse of her depression.

Defendant argues that: 1) Plaintiff's claimed mental damages are not "garden variety" emotional distress; 2) Plaintiff's history of depression is not only relevant to her claim of emotional distress but also to her claim of disability discrimination; and 3) the liberal rules of discovery require the [*8] production of mental health records, even if the claim is for "garden variety" emotional distress. In support, Defendant cites Merrill v. Waffle House, Inc., 227 F.R.D. 467 (N.D. Tex 2005). In Merrill, as here, the plaintiff argued that certain medical records were irrelevant. Significantly, the plaintiff also relied on Burrell. The court in Merrill found Burrell inapplicable because it relied on Rule 26(a)(1)(B), not Rule 26(b)(1). This recent case then discussed other courts' findings regarding the issue:

> Utilizing this broad construction of relevance in Rule 26(b)(1), several courts have found that medical records are relevant to claims of mental anguish in discrimination cases. See Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 657, 660 (D.Kan.2004)(finding that records relating to plaintiff's medical care, treatment, and counseling were relevant to claim for "garden variety" emotional damages under Title VII as well as to defenses against claim because the records could reveal unrelated stressors that could have affected her emotional well-being); Fitzgerald v. Cassil, 216 F.R.D. 632, 634 (N.D.Ca.2003)(finding [*9] that medical records involving mental health, including physical conditions tied to mental health, were relevant under the broad definition of relevance in Rule 26(b)(1)); Payne v. City of Philadelphia, 2004 U.S. Dist. LEXIS 8425, 2004 WL 1012489, *3 (E.D.Pa. May 5, 2004)(finding that mental health records were relevant since they might suggest whether plaintiff's mental injuries were due to circumstances prior to or as a result of incident at issue, or whether he suffered injuries at all, and interests of adequate and fair discovery favored discovery); Garrett v. Sprint PCS, 2002 U.S. Dist. LEXIS 1914, 2002 WL 181364 (D.Kan. Jan.31, 2002)(finding that plaintiff's intent not to present expert testimony in support of her emotional distress claim did not make medical records and information any less relevant); Le-Fave, 2000 U.S. Dist. LEXIS 22278, 2000 WL 1644154, *2 (finding that medical records were relevant to claim for emotional distress damages and to defense against claim because they could reveal unrelated stressors). See also Simpson, 220 F.R.D. at 365 (finding that medical records specifically referencing or describing plaintiff's emotional or psychological condition were relevant and should [*10] be disclosed, but disallowing disclosure of other medical records relating to physical injuries or conditions unrelated to claims at issue).

Plaintiff has alleged damages due to "severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, and inconvenience." The undersigned finds that Plaintiff's alleged damages, including depression and relapse of depression, are not "garden variety" mental emotional distress. The undersigned finds the evidence sought by Defendant "appears reasonably calculated to lead to the discovery of admissible evidence," and is therefore discoverable. Defendant's Motion to Compel [Docket Entry 69] is therefore **GRANTED** and Plaintiff's Motion for Protective Order [Docket Entry 76] is **DENIED.** This order does not address the admissibility of any such evidence produced.

Plaintiff shall fully respond, within ten (10) days, to Defendant's Interrogatory No. 12 and Request No. 9, as limited by Defendant to "any and all records reflecting treatment for any mental or emotional condition, including any and all records reflecting Plaintiff's treatment with Caroline Esposito." It is further **ORDERED** [*11]

that, if the parties do not already have a "Protective Order" in place that would protect these documents from further dissemination,:

1. All such records produced shall be marked "confidential" by Plaintiff;

2. No copy of the information submitted shall be filed with the Court;

3. Counsel for Defendant shall be responsible for maintaining a list of each and every party, parties' attorneys, and parties' experts who is permitted by him or her to see or have a copy of all or any part of the documents produced in accord with this Order;

4. Prior to permitting any person to see or receive a copy of the information produced pursuant to this Order, counsel shall deliver to each and every such person a copy of this Order, including the protective provisions hereof, and have them sign a written receipt by which they acknowledge they have read and understand the order and are bound thereby;

5. The information contained in the documents shall not be exhibited, reproduced, disseminated, described, made available for inspection or copying in kind, nor shall the same be disclosed whole or in part in any other manner to any person other than the Court, the parties, the parties' attorneys and [*12] the parties' experts;

6. The information contained in the documents shall not be further released, disclosed, discussed or used beyond that which is specifically provided for herein except upon the prior written Order of this Court;

7. Within 30 days of the entry of an Order completing this case and if the records or their contents are not admitted as part of the evidence before a jury and thus made public, said records and the authorized copies thereof, together with the written and signed acknowledgments required hereunder, shall be gathered up by counsel for Defendant and thereafter delivered to counsel for Plaintiff.

**IT IS SO ORDERED.**

The United States District Clerk for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record.

DATED: April 5, 2006

JOHN S. KAULL

UNITED STATES MAGISTRATE JUDGE

LEXSEE 2006 U.S. DIST. LEXIS 24319

**CYNTHIA GREENBERG, Plaintiff, -against- BRUCE SMOLKA, Defendant.**

**03 Civ. 8572 (RWS) (MHD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2006 U.S. Dist. LEXIS 24319**

**April 25, 2006, Decided
April 27, 2006, Filed**

**COUNSEL:** [*1] For Cynthia Greenberg, Plaintiff:
William Harry Goodman, Moore & Goodman, LLP,
New York, NY.

For Bruce Smolka, Defendant: Pamela Lynam Mahon,
New York City Law Department, New York, NY.

**JUDGES:** MICHAEL H. DOLINGER, UNITED
STATES MAGISTRATE JUDGE.

**OPINIONBY:** MICHAEL H. DOLINGER

**OPINION:**

MEMORANDUM & ORDER

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

Plaintiff Cynthia Greenberg is suing a senior official
of the Police Department, alleging in substance that the
defendant physically assaulted her and verbally abused
her while she was participating in a demonstration near
26 Federal Plaza in Manhattan, and that this conduct was
entirely without justification. Plaintiff now moves for a
protective order to preclude defendants from seeking
disclosure of all but one of her communications with her
psychotherapist. For the reasons that follow, we grant her
motion.

A. Pertinent Proceedings

In plaintiff's complaint, she alleges that on May 5,
2003 she participated in a protest against Government
immigration policies, and that at one point during the
demonstration she was huddled with a group of fellow
demonstrators who were either sitting or standing near
the entrance to the Federal [*2] Plaza office building.
She further alleges that defendant Bruce Smolka, an
Assistant Chief of Police, repeatedly kicked her in the
head and then in other parts of her body while calling her
a "fucking cunt" and equivalent terms of opprobrium.
(Compl. at PP2, 14-17). According to the pleading,

plaintiff suffered a concussion and other physical
injuries, economic losses, and also "humiliation,
embarrassment, degradation, psychological pain,
suffering and mental anguish . . . ." (Id. at P21).

In plaintiff's Rule 26(a)(1) disclosure form, she
referred again to the elements of her injuries, and stated
that she had suffered "serious . . . emotional and
psychological injuries . . . ." (Declaration of David
Milton, Esq., executed Feb. 23, 2006, Ex. G at p. 1).
Later in the same document she referred to "emotional
and psychological injuries", which she described as
"severe". (Id., Ex. G at p. 4). When listing potential
witnesses, however, she did not identify her
psychotherapist. (Id., Ex. G at p. 4).

Plaintiff was again called upon to describe her
injuries in response to defendant's interrogatories. Insofar
as pertinent, she responded:

> Plaintiff suffered emotional and [*3]
> physical injuries as a result of the
> incident. Plaintiff's emotional injuries
> include[] anger for several weeks after the
> incident, fatigue, distrust and fear of
> police, humiliation, frustration,
> degradation, and fear of attending some
> other demonstrations. The plaintiff was
> for several weeks after the incident extra
> cautious in public and crowded places in
> fear of re-injuring injuries [sic.] she
> suffered as a result of the incident.

(Id., Ex. D -- Response to Interrogatory 4). The
interrogatories and accompanying document requests
also called for disclosure of all treating sources and
requested releases for all medical treatment extending
back to five years before the incident at issue in this case.
In response, plaintiff subsequently identified several
medical care providers but apparently did not refer to any

psychological treatment. (Id. at P5 & Ex. D -- Response to Interrogatory 6; see id., Ex. E -- Jan. 20, 2006 letter from David Milton, Esq. to Ass't Corp. Counsel Pamela Lynam Mahon) (referring to previously executed releases).

During the course of subsequent discovery, plaintiff produced what her lawyer referred to as "all pertinent medical records", [*4] and at the same time he disclosed that plaintiff had been undergoing psychotherapeutic treatment from a clinical social worker for a period of years both before and after the incident in question. (Id. at P6 & Ex. E). As part of her production, plaintiff also turned over to defendants' counsel a redacted page of notes from her psychotherapist which mentioned that the plaintiff had referred to her arrest during the course of a single session with the psychotherapist. (Id.; see also Declaration of Marie Osterman,, L.C.S.W., executed Feb. 22, 2006, at Ex. 1). With the exception of this one segment, the document in question was redacted to exclude all other material, and plaintiff's counsel advised that all other notes from the psychotherapist were being withheld because they were irrelevant to the claims in the case, reflected "highly sensitive personal matters" and were covered by state and federal medical privacy laws. (Milton Decl., Ex. E).

Defendants' counsel responded by taking issue with plaintiff's limitation of her production of the mental health treatment notes. Noting that plaintiff was seeking relief for what she had characterized as "serious emotional and psychological [*5] injuries," defendant's attorney asserted that access to all mental health treatment records was essential, and demanded production of all records of such treatment extending from five years before the incident to the present. (Milton Decl., Ex. F -- Jan. 25, 2006 letter from Ass't Corp. Counsel Pamela Lynam Mahon to David Milton, Esq.). That demand apparently triggered plaintiff's current motion for a protective order.

B. The Current Application

Plaintiff seeks an order precluding discovery of her "confidential communications with her psychotherapist, including all of the psychotherapist's notes pertaining to such confidential communications." (Notice of Motion). In support of this request, plaintiff reports that she has been "in psychotherapy on and off with Marie Osterman, a social worker, since March 2003", a date that preceded the incident in question by two months. (Declaration of Cynthia Greenberg, executed Feb. 23, 2006, at P2). She also observes that her reasons for commencing and remaining in treatment "are of an intimate and personal nature" and had nothing to do with the events at issue in this case or her reaction to them. (Id. at PP3-4, 18). She further represents [*6] that she mentioned the incident and her reaction to it to her therapist on only one occasion (id. at P5), which the one notation produced to

defendants by Ms. Osterman evidently reflects. (Id.).

As for plaintiff's damage claims in this case, she states that her contentions as to the extent of her emotional injury are quite limited. Specifically, she represents that although she suffered emotional distress in the weeks after the incident that "consisted of anger, humiliation, frustration, degradation, fear and distrust of the police and fear of attending subsequent demonstrations", it was a temporary condition and has not caused her "any specific emotional or mental injury, or particularly severe emotional distress." (Id. at PP14, 16). Thus, she says, although the event "has permanently affected my view of the police, I do not have any permanent emotional distress or damage from the event." (Id. at P17. See also id. at P15). As a result, plaintiff disavows any intention to testify to any more acute distress at trial and also represents that she has no intention of calling Ms. Osterman or any other mental health specialist as a witness. (Id. at PP19-21).

Finally, [*7] plaintiff urges that the court preclude further disclosure of her discussions with her therapist, observing that even the production of the one small segment about her mention of the incident has been very painful to her, and that any further disclosure would imperil her relationship with her therapist and compel her to drop even her minimal emotional-distress claim. (Id. at PP10-11).

In further support of the motion, plaintiff provides us a declaration of Ms. Osterman. Ms. Osterman confirms that she has treated plaintiff from March 2003 to the present, with a hiatus for most of the period from February 2004 to July 2005, and that the issues being discussed "are of a deeply personal, sensitive nature". (Osterman Decl. at PP3-4). She further represents that, based on her review of all her notes as well as her memory of the treatment sessions, plaintiff mentioned the incident at issue here and any emotional impact from it on only one occasion, resulting in a brief notation in her treatment notes, which plaintiff authorized her to disclose. (Id. at PP7-8, 10). That notation reads in full: "5/5 In demonstration -- she was arrested + kicked in the head by cop! Concussion -- seems [*8] nonchalant about it -- Most frightening was his cursing at her." (Id. at P9 & Ex. A).

Ms. Osterman further states that the balance of the notes from that session do not pertain in any way to that incident. She also avers that "other than the single discussion referred to in the attached notes, I have no recollection of Ms. Greenberg's ever discussing the incident or whatever emotional distress she may have suffered as a result of it. The incident and any such distress have simply not been [an] issue in our treatment, nor are they related to the issues we have dealt with in our treatment." (Id. at PP9-10).

Ms. Osterman goes on to note that, apart from her

professional obligation of non-disclosure, such confidentiality is the key to a successful course of psychotherapy. To invade the privacy of that relationship would, in her view, undermine the "trust and openness that are fundamental to the therapeutic process." (Id. at PP5-6). She further states that the disclosure of the single item pertaining to the incident has been the subject of discussion with her patient and has "been a distraction from our ongoing therapeutic work," and that further disclosure -- with the likelihood [*9] that plaintiff would have to see the notes -- would seriously undermine the therapeutic relationship. (Id. at PP11-13).

In response, defendants assert that the plaintiff's request for damages attributable to emotional distress caused by defendant's alleged physical and verbal assault waives any privilege for plaintiff's communications with her psychotherapist. Defendants also note that in the complaint plaintiff alleged that she was suffering continuing psychological harm and that in her written discovery responses she has asserted that her injury was "serious" or "severe". (Def's Memo of Law at 13-4, 10-14).

## ANALYSIS

In Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996), the Supreme Court recognized the existence of a privilege for communications between a psychotherapist and her patient, and further held that the privilege was unconditional, that is, not subject to overruling based on a litigant's showing of need. Id. at 10-18. In so holding despite its normal reluctance to define new areas of privilege, the High Court relied on "the imperative need for confidence and trust" in the psychotherapist-patient relationship. Id. at 10. As [*10] it noted in distinguishing failed efforts to establish a federal doctor-patient privilege:

> Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of the facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

Id. at 10. The Court went on to quote the explanation offered by the Advisory Committee of the Judicial Conference in 1972, when it recommended adoption of a rule recognizing such a privilege:

> A psychiatrist's ability to help her patients "is completely dependent upon [the patients'] willingness and ability [*11] to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure . . . patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule . . ., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment."

Id. at 10-11 (quoting Advisory Committee Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972) (quoting Group for Advancement of Psychiatry, Report No. 45, Confidentiality and Privileged Communications in the Practice of Psychiatry 92 (June 1960)).

The Court adopted the proposed privilege in recognition that it protected "important private interests", as described, and that it also "served public ends." Id. at 11. The public policy embodied in the privilege was grounded in the recognition that "the psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." [*12] Id.

In the view of the Court, the importance of the privilege in the service of these goals substantially outweighed whatever "evidentiary benefit would result from the denial of the privilege. . . ." Id. Denial of the privilege would "chill[]" confidential communications between the psychotherapist and his patient. Moreover, if the privilege were rejected, "much of the desirable evidence to which litigants such as petitioner seek access -- for example, admissions against interest by a party -- is unlikely to come into being. This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged." Id. at 11-12.

Having recognized the privilege, the Court went further by holding that it was absolute rather than conditional, that is, that it could not be overcome simply

on the basis of a showing of need by the discovering party. As the Court explained:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in [*13] Upjohn, if the purpose of the privilege is to be served, the participants in the confidential conversations "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

Id. at 17-18.

Having laid out this framework, the Court also acknowledged that the privilege, although absolute, could be waived by its holder, as can other absolute privileges, most notably the attorney-client privilege. Id. at 15 n.14. The Court declined, however, to go further in suggesting the circumstances that might trigger such a waiver.

In the wake of Jaffee, the federal courts have confronted the waiver question most commonly in three circumstances. In one, the plaintiff is asserting a claim that directly concerns her psychological treatment or is using some of her communications with her therapist in the lawsuit, and in such a case the courts have consistently found a waiver of the privilege. See, e.g., Vasconcellos v. Cybex Int'l, Inc., 962 F. Supp. 701, 708-09 (D. Md. 1997); [*14] Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 129-30 (E.D. Pa. 1997); Doolittle v. Rufo, 1997 WL 151799, *2 (N.D.N.Y. March 31, 1997). See also Allen v. Cook County Sheriff's Office, 1999 U.S. Dist. LEXIS 3587, 1999 WL 168466, *2 (N.D. Ill. March 17, 1999); Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 229-30 (D. Mass. 1997). In another, the plaintiff seeks compensation for psychological injuries -- typically of a serious nature -- that derive from alleged misconduct by the defendant, and is being treated for those injuries. In that circumstance, most, although not all, courts have held that the assertion of a damage claim that directly implicates the subject matter of otherwise privileged treatment communications waives the privilege, at least for those communications that touch upon that subject matter. E.g., Speaker v. County of San Bernadino, 82 F. Supp.2d 1105, 1115, 1120 (C.D. Cal.

2000); Sidor v. Reno, 1998 U.S. Dist. LEXIS 4593, 1998 WL 164823, *2 (S.D.N.Y. April 7, 1998). But see Booker v. City of Boston, 1999 U.S. Dist. LEXIS 14402, 1999 WL 734644, *1 (D. Mass. Sept. 10, 1999)(privilege waived only if "plaintiff makes positive use of [*15] the privileged communications in the prosecution of her case"). In the third, the plaintiff asserts a claim for wrongful conduct and seeks damages in whole or in part for resulting distress. In these cases the courts have not developed a consistent approach to whether and when waiver is properly inferred, with some saying that waiver will not be triggered even by a claim for serious psychological injury, others saying that the result depends on the nature or seriousness of the emotional injury asserted, and still others seemingly holding that the mere request for an emotional-distress award waives the privilege.

If the plaintiff contends that he has suffered a serious psychological injury, that is, the inducement or aggravation of a diagnosable dysfunction or equivalent injury, he will typically be deemed to have waived the privilege. E.g., Schoffstall v. Henderson, 223 F.3d 818, 822, 823 (8th Cir. 2000) (plaintiff claiming "extreme" injury waives privilege); Wynne v. Loyola Univ. Of Chicago, 1999 WL 759401, *1 (N.D. Ill. Sept. 3, 1999); Jackson v. Chubb Corp., 193 F.R.D. 216, 225-26 (D.N.J. 2000); McKenna v. Cruz, 1998 U.S. Dist. LEXIS 18352, 1998 WL 809533, [*16] *2-3 (S.D.N.Y. Nov. 19, 1998); Doolittle, 1997 WL 151799, *2. But see Booker, 1999 U.S. Dist. LEXIS 14402, 1999 WL 734644. *1 (citing cases). If, as is more common, the plaintiff seeks compensation for less acute forms of distress -- frequently referred to as "garden variety" emotional-distress claims -- the courts have not provided a consistent response to the argument that such a demand for relief triggers a waiver, although most have rejected that notion of an automatic waiver. Compare, e.g., Gaines-Hanna v. Farmington Public Schools, 2006 U.S. Dist. LEXIS 21506, 2006 WL 932074, *8 (E.D. Mich. April 7, 2006); Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 557 (N.D. Ga. 20001); Ruhlmann v. Ulster County Dep't of Soc. Servs., 194 F.R.D. 445, 448-51 (N.D.N.Y. 2000); Santelli v. Electro-Motive, 188 F.R.D. 306,, 309 (N.D. Ill. 1999), with Kerman v. City of New York, 1997 U.S. Dist. LEXIS 16841, 1997 WL 666261, *2-4 (S.D.N.Y. Oct. 24, 1997); Lanning v. SEPTA, 1997 U.S. Dist. LEXIS 14510, 1997 WL 597905, *2 (E.D. Pa. Sept. 17, 1997). In addition, even if waiver is found, there appears to be little discussion of the scope of such an implied [*17] waiver. But see, e.g., Speaker, 82 F. Supp.2d at 1120 (limiting waiver to communications concerning specific condition that defendant invoked as affirmative defense).

In this case defendants seem to endorse the notion that any request for an award of emotional-distress damages automatically triggers a waiver for all

communications with a psychotherapist. Alternatively, they argue that plaintiff has sought damages for an emotional condition of sufficient gravity to justify inferring a general waiver for all such psychotherapeutic communications. Plaintiff, in contrast, emphasizes in her declaration that she has narrowly defined the nature of the emotional injury for which she seeks compensation and invites us to adhere to caselaw suggesting that "garden variety" emotional-distress claims do not waive the privilege. The debate, as posed, implicates the so-called at-issue theory of waiver, which is premised on the notion that when a party puts into controversy a factual assertion that may be tested only by resort to a communication as to which that party maintains a privilege, then the privilege is deemed waived.

We note, however, that the current posture of discovery [*18] also poses another waiver issue, because plaintiff has explicitly chosen to disclose to defendants a portion -- albeit a very narrow one -- of her communications with her psychotherapist. By that disclosure, she has of course waived her privilege for that disclosed communication. See, e.g., In re von Bulow, 828 F.2d 94, 102 (2d Cir. 1987). This limited disclosure and consequent waiver of confidentiality requires us to determine the appropriate breadth of the waiver, that is, whether it triggers an implied waiver for additional portions of any communications between plaintiff and her psychotherapist. See, e.g., id. at 101-03.

Finally, even if we conclude that as-yet undisclosed communications between plaintiff and her psychotherapist are no longer protected by a privilege, we must still determine whether other circumstances nonetheless counsel against compelled production of the remaining notes of the treating social worker. In doing so, we consider the appropriateness of limiting discovery under the provisions of Fed. R. Civ. P. 26(c)(4).

For reasons to be noted, we conclude that plaintiff has not waived [*19] the privilege for her unrevealed communications with her psychotherapist and that in any event a proper balancing of interests under Rule 26(c) dictates, at least on the current record, that those other communications not be disclosed.

(A) At-Issue Implied Waiver

The notion that a party who places her emotional or psychiatric status in issue may waive the privilege is premised on a theory of implied waiver that rests on a concern for fairness. As summarized in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), a decision cited with approval by the Second Circuit:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party

asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the [*20] protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

Id. at 581, cited with approval in United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).

In adopting this approach in Bilzerian, the Second Circuit addressed the question of whether a criminal defendant, by testifying that he had believed that his actions were legal, would waive the attorney-client privilege for discussions with his attorney about the challenged transactions. In rejecting the defendant's non-waiver argument, the Court observed that "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. Thus the privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of protected communications." Id. at 1292.

As we have previously observed: [*21]

> The implicit point was that even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication. Thus, in Bilzerian the Court concluded:

> > This waiver principle is applicable here[,] for Bilzerian's testimony that he thought his actions were legal would have put his

knowledge of the law and the basis for his understanding of what the law required into issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.

Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (quoting Bilzerian, 926 F.2d at 1292).

Given these general criteria, we reject the notion that plaintiff's demand for emotional-distress damages necessarily triggers a waiver of the privilege for her psychotherapy records. To take a prototypical example, if a plaintiff is the victim of a defendant's misconduct, and she asserts that she suffered emotional distress [*22] as a result, she may well be seeking compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized. In such a circumstance, the fact that the plaintiff is in treatment for a condition unrelated to the distress that was triggered by the misconduct does not, by itself, provide a basis for suggesting either that the treatment is in issue as a result of the plaintiff's claim or that access to treatment records is in any sense necessary or even significant for evaluating such a claim.

There are two sensible rationales for giving a defendant access to the plaintiff's treatment records when the treatment itself is not the subject of the lawsuit. First, if the treatment is directed at dealing, in whole or in part, with the consequences of the plaintiff's exposure to the defendant's alleged harmful misconduct, those records may shed light on the extent of the injury caused by the misconduct. See, e.g., Wynne, 1999 WL 759401 at *1; Jackson, 193 F.R.D. at 225-26. Second, if the plaintiff has assertedly suffered more severely from exposure to the tortious act than a healthy person would [*23] have been expected to suffer, that emotional distress may be attributable, at least in part, to other causes, and those other causes may be reflected in the treatment records. See, e.g., Sidor, 1998 U.S. Dist. LEXIS 4593, 1998 WL 164823 at *2; Fox v. Gates Corp., 179 F.R.D. 303, 306 (D. Colo. 1998). In the hypothetical circumstances that we have posited above, however, neither rationale would be applicable, and hence the standards for the at-issue waiver would not be satisfied.

That is the case here. As represented by plaintiff on her motion, she suffered only the sort of distress that could reasonably be attributable to the incident, and she

disclaims any more aggravated harm. Thus she reports that she was angered and distressed by the incident, offended by the alleged behavior of the defendant, and reluctant to participate in later demonstrations. She disclaims any other emotional consequence, however, and indicates that the distress lasted only a matter of weeks and did not lead to the creation or aggravation of any psychological dysfunction or illness. She also represents, with the concurrence of the psychotherapist, that her treatment began prior to the incident and has [*24] addressed only issues wholly unrelated to the incident, and that in fact she mentioned the event only once in the course of her multi-year therapy. She also commits not to calling her therapist or any other mental health experts as witnesses at trial.

Under these circumstances, there is no basis for at-issue waiver. Plaintiff has not put in issue either the treatment or the issues being addressed in the treatment, and her willingness to abjure any contention at trial that she suffered more than the sort of emotional distress that any healthy person might feel as a result of being kicked repeatedly and cursed at by a police official entirely undercuts any contention that defendants have a compelling need to learn the details of her treatment to locate other possible causes of significant psychological injury or trauma. See, e.g., Dominguez-Silva v. Harvey, 2006 U.S. Dist. LEXIS 20885, 2006 WL 826091, *1 (N.D. Ga. March 23, 2006); Ruhlmann, 194 F.R.D. at 450; Hucko v. City of Oak Forest, 185 F.R.D. 526, 527 (N.D Ill. 1999). n1

n1 The only other conceivable theory for arguing waiver -- one not articulated by defendants -- is that the plaintiff might have a psychological makeup that should have led her to suffer less distress than the ordinary well-balanced person from the claimed events, and that to determine this the defendants would need access to her therapy records. The utter implausibility of such a theory undoubtedly explains why defendants have not articulated it.

[*25]

In addition, any suggestion by defendants that they have a compelling need for access to the undisclosed treatment records to rebut this aspect of plaintiff's damages claim is further belied by the fact that plaintiff has disclosed the only portion of the therapy records pertinent to the claim and her resultant distress, and that one item fully supports the minimal nature of the injury that plaintiff may have suffered. Thus, in her contemporaneous session notes the therapist recites plaintiff's reference to the incident and observes how "nonchalant" plaintiff was about the experience. In addition, by submitting the affidavit of the therapist,

plaintiff confirms the fact that this was plaintiff's only mention of the event to the therapist throughout their treatment relationship, a fact that again dramatically underscores the minimal emotional effect of the incident on the plaintiff. In short, on the current record defendants have no basis for claiming either that the treatment itself is in issue or that they have any articulable need for additional treatment records to respond to plaintiff's damage demand.

In resisting these conclusions, defendants contend principally that, despite [*26] plaintiff's efforts to minimize her psychological injury on this motion, her current representations are inconsistent with the allegations in her complaint, as well as with the representations that she made in her initial Rule 26(a)(1) disclosures and her interrogatory answers, which referred to her emotional distress as "serious" and "severe." (Deft's Memo of Law at 2, 13). There are two short answers to this contention. First, adjectives of this sort are not necessarily inconsistent with the type of emotional reaction that someone without other psychological baggage might experience when encountering the type of misconduct that plaintiff alleges she was exposed to. Second, if there is any inconsistency, plaintiff may be conclusively held to her current representations as to the extent of her injury. Thus, she will be precluded from testifying inconsistently with her current version of her injury. Moreover, if she strays from that version, she may be cross-examined about the inconsistencies. Furthermore, and most definitively, defendants may be given the benefit of a jury instruction that limits plaintiff's emotional-distress claim to the injury that she is now asserting.

Finally, [*27] in rejecting the at-issue argument pressed by defendants, we note that, in substance, it rests on the notion that access to treatment records might, in some not-too-specifically defined way, be helpful to defendants in preparing to rebut plaintiff's damage case. To accept this notion as the touchstone of waiver would be inconsistent with the far more demanding standards generally recognized for at-issue waiver of other privileges, and would be particularly inappropriate in view of the very strong emphasis of the Supreme Court on the notion that this particular privilege is not a conditional one, that is, not one that can be set aside on the basis of a party's showing of need. If need alone does not justify waiver, still less can a speculative definition of conceivable relevance be sufficient to justify eviscerating this privilege.

(B) Partial-Disclosure Waiver

Although not mentioned by defendants, another waiver theory might be invoked in this case based on the fact that plaintiff has chosen to disclose a portion -- albeit a small one -- of her communications with her therapist. The underlying principle of this waiver theory dictates, in substance, that a party may not disclose [*28] portions of a privileged communication to support her case while withholding the balance of the communication insofar as it addresses the same subject matter. See, e.g., Falise v. American Tob. Co., 193 F.R.D. 73, 84-85 (E.D.N.Y. 2000) (citing cases).

This theory does not help defendants, however, for two reasons. First, as noted, the communication disclosed is not favorable to plaintiff on the matter of her damages. The notes in question reflect the therapist's impression that plaintiff was "nonchalant" about the incident, and the therapist also confirms that plaintiff never again mentioned the event. Second, as represented by the therapist, none of the other records refer to the same subject matter as the disclosed note, that is, plaintiff's encounter with the defendant or her emotional reaction to it.

(C) Rule 26(c) Analysis

Even if we concluded that the therapist-patient privilege did not apply to the communications in question, it would not necessarily follow that production is mandated. Fed. R. Civ. P. 26(c) authorizes the court,

> for good cause shown, . . . [to] make any order which justice requires to [*29] protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:
>
> . . .
>
> . . .
>
> . . .
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters . . . .

Fed. R. Civ. P. 26(c). This provision gives the court broad discretion to tailor discovery to the needs of the case and the interests of the discovered party, and in doing so the court may "undertake some substantive balancing of interests." In re Sealed Case (Medical Records), 363 U.S. App. D.C. 214, 381 F.3d 1205, 1215 (D.C. 2004) (quoting Laxalt v. McClatchy, 258 U.S. App. D.C. 44, 809 F.2d 885, 890 (D.C. 1987)). As the Supreme Court has observed, "although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35

2006 U.S. Dist. LEXIS 24319, *

n.21, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)). Accord, e.g., Pearson v. Miller, 211 F.3d 57, 72 (3d Cir. 2000).

In undertaking this balancing analysis, the courts are to [*30] give weight to legitimate privacy interests even if the information in question is not protected by an enforceable privilege. See, e.g., In re Sealed Cases (Medical Records), 381 F.3d at 1215-16; Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 924-27 (7th Cir. 2004); United States v. Microsoft Corp., 334 U.S. App. D.C. 165, 165 F.3d 952, 960 (D.C. 1999); Pearson, 211 F.3d at 65; Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). In doing so, "'the court, in its discretion, is authorized by this subsection to fashion a set of limitations that allows as much relevant information to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests -- including privacy and other confidentiality interests -- that might be harmed by the release of the material sought.'" In re Sealed Case (Medical Records), 381 F.3d at 1216 (quoting Pearson, 211 F.3d at 65). Cf. Ramsey v. NYP Holdings, Inc., 2002 U.S. Dist. LEXIS 11728, 2002 WL 1402055, *13 (S.D.N.Y. June 27, 2002).

In this case the policy considerations that dictated the recognition of the psychotherapist [*31] privilege not only by the Supreme Court but by the fifty states, see Jaffee, 518 U.S. at 12-13 & n.11, speak strongly in favor of limiting production of treatment records to the minimum necessary to allow the defendants to prepare their case properly for trial. Since plaintiff has produced the one item from those records that speaks to the incident in question and to her reaction to it, and since the balance of the records do not reflect either discussion of the incident or efforts to address symptoms or disorders attributable to the incident, the disclosure already made represents an appropriate balancing of the interest of the patient in confidentiality and the interest of defendants in access to information that is both pertinent to the claims at issue and helpful to defendants in defending against plaintiff's demands for relief.

(D) The Question of In Camera Review

In reaching our conclusions on the issues raised by plaintiff's motion, we have relied upon the descriptions provided by plaintiff and her therapist as to the contents of the treatment notes and the substance of the communications at issue. Although neither party has suggested a need for in camera [*32] review of those

notes to confirm the accuracy of those descriptions, it is appropriate at this point for us to make clear the basis for our decision not to pursue such a procedure.

In camera review may be a helpful process in resolving disputes as to the contents, and hence the discoverability, of documents. Because, however, it imposes a burden on the courts and may involve a degree of intrusiveness in some circumstances, the courts have not undertaken such reviews on a routine basis, and have generally left to the parties the task of justifying such a procedure. See, e.g., United States v. Zolin, 491 U.S. 554, 565-72, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989); King v. Conde, 121 F.R.D. 180, 189-90 (E.D.N.Y. 1988). In this case, plaintiff's therapist represents that she reviewed all of her notes of her sessions with plaintiff and that only the one small segment produced reflects any reference to plaintiff's encounter with the defendant and its aftermath. She further states that her recollection is consistent with this discovery, that is, plaintiff mentioned the incident to her on only one occasion. We have been presented with no reason to doubt these representations, and hence [*33] have chosen not to pursue our own review of these notes, aware, as we are, that even such an in camera process may have untoward consequences for the psychotherapist's relationship with her patient. That said, we would not hesitate to undertake such a procedure if presented with a cogent reason for doing so, but none has been offered.

CONCLUSION

For the reasons noted, plaintiff's motion for a protective order is granted. In so ruling we note that the protection afforded plaintiff is without prejudice to defendants' right to seek further relief in the event that additional information comes to light that would suggest a more convincing reason for obtaining access to the treatment records. Defendants are also free to question plaintiff at her deposition about the statements that she makes in her declaration in support of her motion.

Dated: New York, New York

April 25, 2006

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE